**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Jeffery Cox** ) | |
|     313 West Kanawha Avenue ) | |
|     Columbus, OH 43214**,** ) | |
| ) | |
|     **PLAINTIFF** ) | |
| ) | |
| **v.** ) | |
| ) | **CASE NO. 2:18-cv-1631** |
| **Board of County Commissioners of** ) | |
| **Franklin County, Ohio** ) | **Judge _____** |
|     Composed of ) | |
|     The Hon. Kevin L. Boyce ) | |
|     The Hon. Marilyn Brown ) | |
|     The Hon. John O'Grady ) | |
|     373 South High Street, 26th Floor ) | |
|     Columbus, OH 43215-6314 ) | |
| ) | |
|     **DEFENDANT** ) | |

<u>**COMPLAINT FOR INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES TO
ENFORCE THE FEDERAL CLEAN WATER ACT AND JURY DEMAND**</u>

1.    *The Plaintiff Jeffery Cox brings this Clean Water Act citizen suit to protect not just himself and his property, but to protect residents and rivers and other streams in Franklin County from illicit discharges of sewage from Franklin County's municipal separate storm sewer system ("MS4").*

2.    *Prior to bringing this citizen suit, the Plaintiff and his counsel undertook a months-long investigation of the violations and the resulting harm from those violations. The results of that investigation were detailed in a 27-page, single spaced notice letter that described thousands of violations and that was provided to Franklin County and Ohio Environmental Protection Agency ("Ohio EPA").*

3.    *In response to the Plaintiff's notice letter, upon information and belief, Franklin County went to the Ohio EPA and effectively*

1

*invited Ohio EPA to sue the County. A few weeks later, and without consulting Mr. Cox on the decree's terms, the Ohio EPA and Franklin County came up with a purported consent decree that fails to diligently enforce the violations.*

4.      *Because the vague and unenforceable decree will not remedy the violations and harm, but will instead allow the violations to continue, Mr. Cox files this suit to do what Congress intended in adopting citizen suit provisions in environmental statutes— allowing private citizens to enforce federal law where state and federal agencies fail to do so.*

## INTRODUCTION

5.      Plaintiff Jeffery Cox brings this civil suit under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("the Clean Water Act" or "CWA"), specifically under Section 505 of the CWA, 33 U.S.C. § 1365, as amended, against the Board of County Commissioners of Franklin County, Ohio, comprised of Kevin L. Boyce, Marilyn Brown, and John O'Grady, ("Defendant or County"). The County is responsible for operating and maintaining the municipal separate storm sewer system ("MS4"), which serves the urbanized unincorporated areas (townships) of Franklin County. Plaintiff brings this suit because of the ongoing illegal discharges, significant water quality problems, and programmatic violations associated with the County's MS4, all in direct violation of 33 U.S.C. § 1311(a) and 1342(p)(3)(B), applicable CWA regulations, the County's National Pollutant Discharge Elimination System permit ("NPDES Permit"), and Ohio law. Defendant Franklin County is responsible for the ongoing MS4-related violations and the significant water quality harm to numerous creeks, streams, and rivers—including Alum Creek, Big Darby Creek, Big Walnut Creek, Blacklick Creek, Hellbranch Run, Little Darby Creek, Olentangy River, Rocky Fork Creek, Scioto River, and Walnut Creek—that results from those violations.

2

6.      These violations of the CWA are ongoing and are likely to continue into the foreseeable future. These past and continuing unpermitted discharges and permit violations have impacted and harmed and will continue to impact and harm water quality, aquatic life, and human health, and have harmed and will continue to harm Plaintiff. Plaintiff seeks declaratory relief, injunctive relief, civil penalties, and other relief to correct the unlawful, recurring, unpermitted discharges of pollutants and permit non-compliance by Defendant Franklin County.

**JURISDICTION, VENUE, NOTICE AND ABSENCE OF DILIGENT PROSECUTION**

7.      This Court has subject matter jurisdiction over the claims in this Complaint under: the citizen suit provision of the CWA, 33 U.S.C. § 1365(a)(1), without regard to the amount in controversy or the citizenship of the parties; 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1355 (action for penalty); and 28 U.S.C. § 2201-02 (declaratory judgment).

8.      Under Section 505 of the CWA, citizens are granted a right to bring suit against violators to enforce terms of the CWA, and regulations, provisions and permit terms adopted thereunder. Recognizing that the resources of the federal and state environmental agencies would not permit those agencies to enforce environmental laws fully and diligently in all respects, Congress intended citizen suits to be an integral part of the overall enforcement scheme of the CWA especially where the governments fail to diligently and fully enforce the law.

9.      This Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over the claims that arise under the laws of the State of Ohio.

10.      This Court also has personal jurisdiction over Defendant because it is located in Ohio and is a political subdivision of the State of Ohio. Further, Defendant's acts, violations, and omissions that are the subject of this Complaint have occurred in Ohio, specifically in Franklin County.

11.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 33 U.S.C. § 1365(c)(1) in that the CWA violations alleged have occurred in this district, and the MS4 that is the subject of this Complaint is located in this district.

12.    Over 60 days before filing this action under 33 U.S.C. § 1365, Plaintiff gave written notice of the violations alleged herein and his intent to sue by letter ("Notice Letter") of August 20, 2018 sent, via certified mail, to Defendant and all other persons required to be notified as required by 33 U.S.C § 1365(b), 40 C.F.R. § 135.2, and 40 C.F.R. § 135.3. Defendant and all required persons and entities received the Notice Letter.

13.    The CWA violations alleged are continuing, ongoing, and reasonably likely to re-occur. Defendant remains in violation of the CWA as of the filing of this Complaint.

14.    Notwithstanding a November 9, 2018 Proposed Consent Decree (Proposed Decree) by the Ohio EPA, neither the United States Environmental Protection Agency ("USEPA") nor a State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the violations of the effluent standards and limitations described herein.

15.    For years, the Ohio EPA has known about, but failed to enforce, the effluent standards and limitations at issue in this complaint, including the illicit discharges into and from the MS4. The Proposed Decree continues this pattern, as the Proposed Decree is not capable of requiring compliance with the effluent standards and limitations at issue and is not in good faith calculated to do so.

16.    The Proposed Decree would, in fact, allow the County to continue to engage in wholesale violations of Ohio Revised Code ("RC") Chapter 6111, the NPDES Permit, and provisions of the CWA. For example, the Proposed Decree would allow illicit non-storm water

discharges from the County's MS4 in violation of the NPDES Permit, RC Chapter 6111, and the Clean Water Act to continue. Moreover, the Proposed Decree wholly fails to require the County to identify and eliminate all illicit discharges into and from the MS4, as required by the NPDES Permit and state and federal water laws. The Proposed Decree also allows the County to continue to violate effluent standards and limitations that apply to its Operation and Maintenance program ("O & M program"). By way of illustration, the County's current O & M program does not require elimination of treatment systems illegally discharging to the MS4 system, as required by the NPDES permit, the CWA, and state water laws. The Proposed Decree does not require these violations to be eliminated or remedied.

17.    The Proposed Decree is also wholly illusory because it, for example, lacks meaningful or enforceable deadlines and includes vague and unenforceable language. For example, the Proposed Decree does not require identification and elimination of violations, but instead only provides that certain illegal systems be somehow "addressed" where vaguely "feasible." This language effectively gives the violator discretion over which subset of violations are located, but even fails to require elimination for those violations that the violator chooses to locate. Further, rather than requiring actual compliance, the Proposed Decree provides for the submission of vaguely defined plans that would not be made available to the public for review and comment. By way of illustration, the Proposed Decree does not require construction of sewers in areas where needed to eliminate violations, but instead only provides that the County would submit a plan and a schedule to determine if any additional areas within the MS4 can be legally, feasibly, and economically connected to sanitary sewers.

18.    Additionally, the civil penalty in the Proposed Decree is wholly insufficient to deter violations, given that there have been hundreds of documented violations by the County.

The Defendant has been aware of the violations for years, but failed to take steps to remedy them.This knowledge, along with the scope of the violations and the threats posed, make the gravity of the violations significant.

19.     While the Proposed Decree fails to diligently prosecute the violations actually raised by Ohio EPA, the Proposed Decree fails to even mention, let alone remedy, hundreds of other violations, including by way of illustration: (a) the County's failure to trace and locate sources of non-storm water discharged from over 150 listed outfalls and failure to eliminate those illicit sources; (b) the County's violations of the CWA and NPDES Permit for failing to eliminate known illicit discharges; (c) the County's violations of the CWA and NPDES Permit for unpermitted discharges from over 150 listed outfalls; (d) the County's failure to effectively prohibit illicit discharges into the MS4 through ordinance or other regulatory mechanism; (e) the County's failures to reduce pollutants to the maximum extent practicable; (f) the County's violations of program requirements regarding the Stormwater Management Program; and (g) the County's violations of program requirements regarding the Illicit Discharge Detection and Elimination Plan. These violations are enforceable in this citizen suit and these violations will foreseeably continue without the relief requested.

## DESCRIPTION OF THE PARTIES

20.     Plaintiff Jeffrey Cox is a resident of Sharon Township, Franklin County, Ohio. Mr. Cox owns property and resides at 313 West Kanawha Avenue, Columbus, OH 43214. Almost immediately after moving into his home in 2016, Mr. Cox started to observe (and continues to observe) that noxious sewage odors and gases frequently and without warning are emitted from the curb inlets connected to the storm sewer on West Kanawha Avenue, which is part of Defendant's MS4.

21. The CWA and NPDES Permit require that the MS4 only receive and convey storm water. "Storm water" refers to "storm water runoff, snow melt runoff, and surface runoff and drainage." Discharging non-storm water, including water containing sewage, into and from the storm sewer is prohibited.

22. Despite this clear prohibition, thousands of illicit discharges to the MS4 are discharging various pollutants into the MS4. This illegal activity includes homes on West Kanawha Avenue with home sewage treatment systems illicitly discharging sewage to the MS4, in violation of the NPDES Permit and the CWA. One of the MS4 inlets is only 50 feet from Mr. Cox's property and interferes with his ability to use and enjoy his property and constitutes a nuisance.

23. Defendants have not eliminated, and do not plan to eliminate, these illicit discharges, in violation of the CWA and NPDES Permit. The Proposed Decree allows these illegal discharges to continue.

24. Because of the ongoing unlawful discharges of non-storm water and other pollutants from numerous outfalls of the MS4, including from the outfall at the end of West Kanawha Avenue to the Olentangy River, Mr. Cox has sharply curtailed his use and enjoyment of nearby rivers and creeks. Further, Mr. Cox has been and continues to be exposed to the pollutants from these illegal discharges because he frequents the local water bodies impacted by the illegal discharges.

25. Plaintiff has a protectable economic interest in his real property and personal property that have been, are being, and will continue to be adversely affected and harmed by the County's ongoing violations of the CWA.

26.     Plaintiff has a protectable environmental, aesthetic, recreational, and conservation interest in his surrounding environment, including an interest in protecting his health and welfare. These interests have been, are being, and will continue to be adversely affected and harmed by the County's ongoing violations of the CWA.

27.     Because of the thousands of illicit connections to and ongoing unlawful discharges of non-storm water and pollutants from numerous outfalls of the MS4, including from the outfall at the end of West Kanawha Avenue, Plaintiff has a recognizable interest in enforcing federal and state law, including the CWA.

28.     The relief sought, including findings of liability, penalties, and injunctive relief, is likely to reduce and redress the harms to Plaintiff caused by Defendant's unlawful activities.

29.     Defendant Franklin County is a statutory subdivision of the State of Ohio organized under RC Chapter 301. Franklin County is administered by a board of three county commissioners established under RC Chapter 305 and 307. The commissioners are elected officials and are sued in their official capacities. Among the powers exercised by Franklin County is the authority to establish and manage a system of sewers, including storm water sewers, under RC Chapter 6117, in the unincorporated areas of Franklin County. Under this authority, Franklin County owns and operates the MS4 at issue in this proceeding.

30.     Franklin County operates the MS4 under a general NPDES permit issued to it by the Ohio EPA under Section 402(p) of the CWA, 33 U.S.C. § 1342(p). The Franklin County Commissioners are named as the permittee on the NPDES Permit.

## STATUTORY AND REGULATORY BACKGROUND

31.     The objective of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §

8

1251(a). To that end, Section 301(a) of the CWA declares unlawful "the discharge of any pollutant by any person" not in compliance with other specified sections of the CWA. 33 U.S.C. § 1311(a), 1342(p)(3)(B).

32.     To further this objective, the CWA prohibits the discharge of pollutants from point sources into navigable waters, unless authorized under an NPDES permit. 33 U.S.C. § 1311(a).

33.     The CWA defines "pollutants" to include, *inter alia*, sewage and sewage sludge. 33 U.S.C. § 1362(6).

34.     The CWA defines a "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

35.     The CWA defines "navigable waters" as "the waters of the United States." 33 U.S.C. § 1362(7).

36.     The CWA requires NPDES permits for discharges from municipal storm sewer systems. 33 U.S.C. § 1342(p)(3)(B).

37.     The CWA provides that states, upon USEPA's approval, may administer their own NPDES permit programs. 33 U.S.C. §1342(b). The State of Ohio's NPDES permit program was approved by USEPA under 33 U.S.C. §1342(b). This program is administered by Ohio EPA under state statutory authority contained in RC Chapter 6111. Under this authority, Ohio EPA issues NPDES permits to persons, including political subdivisions, authorizing discharge of pollutants into waters of the United States.

38.     Defendant is required to obtain an NPDES permit from Ohio EPA for discharges from the MS4's outfalls and pipes, which are point sources, to the Scioto and Olentangy Rivers and their respective tributaries, which are waters of the United States.

39.     These federal and state programs require that NPDES permits for MS4 discharges include limitations necessary to meet water quality standards and other requirements as established in the CWA and prohibit discharge of pollutants that cause or contribute to violating water quality standards. 40 C.F.R. §§ 122.4(d), 122.44(d).

40.     The CWA requires that NPDES permits for MS4 discharges "effectively prohibit non-stormwater discharges into the storm sewers." 33 U.S.C. § 1342(p)(3)(B)(ii).

41.     The CWA compels that NPDES permits for MS4 discharges to "require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as … [are] appropriate for the control of such pollutants." 33 U.S.C. § 1342(p)(3)(B)(iii).

42.     In 2002, Ohio EPA issued an NPDES General Permit authorizing MS4 discharges and approved Defendant, as permittee, "and others" to be covered under that permit, which had a five-year term. The "others" referred to are co-permittees and are the Franklin County Drainage Engineer and the 17 townships in the unincorporated urbanized areas of Franklin County, specifically Blendon, Brown, Clinton, Franklin, Hamilton, Jackson, Jefferson, Madison, Mifflin, Norwich, Perry, Plain, Pleasant, Prairie, Sharon, Truro, and Washington Townships. Defendant, as permittee, assumed responsibility for the lawful operation of the entire MS4 system in unincorporated urbanized areas of Franklin County.

43.     After the initial permit expired, it was renewed by Ohio EPA for additional five-year periods in June 2009, designated OHQ000002, and September 2014. The current permit, designated OHQ000003, expires in September 2019. Defendant and its co-permittees were subject to OHQ000002 and are currently subject to OHQ000003 (County permit no. 4GQ10009*CG). These permits are collectively referred to herein as the "NPDES Permit."

44.     The citizen suit provision of the CWA authorizes "any citizen" to commence a civil action against "any person … who is alleged to be in violation of … an effluent standard or limitation," 33 U.S.C. § 1365(a)(1).

45.     The CWA defines "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). The CWA defines "person" as "an individual, … or political subdivision of a State." 33 U.S.C. § 1362(5).

46.     Plaintiff is a "citizen" within the meaning of 33 U.S.C. § 1365(a), (g) and 1362(5).

47.     Defendant is a "person" within the meaning of 33 U.S.C. § 1365(a) and 1362(5).

48.     The term "in violation of … an effluent standard or limitation" means, *inter alia*, a discharge of a pollutant without authorization by an NPDES permit or any violation of an NPDES "permit or condition thereof." 33 U.S.C. § 1365(f)(1), (6).

49.     Defendant is required—and has failed—to comply with the effluent standards and limitations in the NPDES Permit issued to it by Ohio EPA.

50.     Each violation of an NPDES permit and each discharge of a pollutant that is not authorized by an NPDES permit are violations of the CWA and are grounds for enforcement actions under the CWA, including citizen enforcement actions seeking civil penalties and injunctive relief. In addition, each day that Defendant has violated or continues to violate the

CWA or the NPDES Permit is a separate and distinct violation of the CWA and the NPDES Permit. 33 U.S.C. § 1311(a), 1342(p), 1365(a); 40 C.F.R. § 122.41.

## DEFENDANT'S VIOLATIONS OF THE CLEAN WATER ACT

51. Defendant owns and/or operates and is responsible for the lawful operation of the entire MS4 system in the urbanized unincorporated areas of Franklin County.

52. The MS4 has hundreds of outfalls that discharge into numerous creeks, streams, and rivers of the Alum Creek, Big Darby Creek, Big Walnut Creek, Blacklick Creek, Hellbranch Run, Little Darby Creek, Olentangy River, Rocky Fork Creek, Scioto River, and Walnut Creek watersheds.

53. The MS4's outfalls are point sources as defined by the Clean Water Act.

54. The waterbodies listed above are waters of the United States as defined by the Clean Water Act and are waters of the State of Ohio.

55. These creeks, streams, and rivers in these watersheds are used for various recreational uses, such as family picnics, fishing, boating, waterskiing, kayaking, canoeing, biking, birding, and hiking. In addition, the Big Darby Creek and the Little Darby Creek are state scenic rivers. The Big Darby Creek, the Little Darby Creek, the Olentangy River, and the Big Walnut Creek are designated as excellent warmwater habitat. The Big Darby Creek is a valuable natural resource. The Big Darby Creek and the Big Walnut Creek have significant populations of freshwater mussels. The Scioto River and the Big Walnut Creek are sources of drinking water.

56. Defendant's NPDES Permit authorizes it to discharge from its MS4 outfalls and to the waters listed above only under the conditions specified in the NPDES Permit.

57. Defendant's NPDES Permit contains specific limitations designed to limit or prevent the degradation of water quality in the receiving waters by discharges from the MS4. The

NPDES Permit only authorizes "storm water discharges" from the MS4. The NPDES Permit defines "storm water" as "storm water runoff, snow melt runoff, and surface runoff and drainage," consistent with 40 C.F.R. § 122.26(b)(13).

58.    Thus, any discharges not comprised entirely of storm water runoff, snow melt runoff, and surface runoff and drainage are not permitted. While the NPDES Permit does authorize several specified "non-storm water discharges," no exemptions apply to the violations alleged herein.

59.    Further, the County's NPDES Permit expressly prohibits "discharges that are mixed with sources of non-storm water," pursuant to the CWA's mandate that NPDES permits for MS4s "effectively prohibit non-stormwater discharges into the storm sewers." 33 U.S.C. § 1342(p)(3)(B)(ii). The NPDES Permit provides several exceptions to this prohibition; however none are applicable to the violations in this case.

60.    Besides the prohibitions pertaining to protecting water quality, the NPDES Permit expressly incorporates the "maximum extent practicable" standard set forth in the CWA for MS4 permits. The NPDES Permit requires Defendant to "develop, implement, and enforce an SWMP [Storm Water Management Program] designed to reduce the discharge of pollutants from [the] MS4 to the maximum extent practicable (MEP), to protect water quality, and to satisfy the appropriate water quality requirements of [RC Chapter 6111] and the Clean Water Act." The NPDES Permit defines the SWMP as "a comprehensive program to manage the quality of storm water discharged from the [MS4]." The NPDES Permit also dictates the content of the SWMP.

61.    One required part of the SWMP is the development, implementation, and enforcement of "a program to detect and eliminate illicit discharges, as defined in Part VI of [the NPDES Permit], into [the] MS4." Part VI of the NPDES Permit defines "illicit discharge" (as it

is defined at 40 C.F.R. § 122.26(b)(2)) as "any discharge to a [MS4] that is not entirely composed of storm water." The NPDES Permit also dictates the content of this required Illicit Discharge Detection and Elimination (IDDE) program.

62.     The NPDES Permit requires, as part of the IDDE program, "dry weather field screening for non-storm water flows." This screening program must sample all MS4 outfalls during dry weather conditions so illicit discharges can be identified. The IDDE program must contain procedures for tracing sources of illicit discharges and removing the sources of illicit discharges. The screening program results are to be used to "establish priorities and specific goals for long-term system-wide surveillance of [the] MS4, as well as for specific investigations of outfalls and their tributary area where previous surveillance demonstrates a high likelihood of illicit discharges." The results of the screening program are to be reported annually to Ohio EPA along with the number of illicit discharges identified and eliminated.

63.     Another required component of the IDDE program is the identification of all "on-site sewage disposal systems connected to discharge to" the MS4.

64.     Defendant has conducted dry weather screening of MS4 outfalls. For numerous outfalls, water samples were collected and tested by a laboratory. Based on the laboratory results, hundreds of the illicit discharges from the MS4 identified contain high levels of bacteria and other pathogens associated with the discharge of untreated human waste, including high levels of *E. coli*, fecal coliform, and fecal streptococci. Laboratory results also found nitrogen and phosphorous compounds in the discharges, which show the discharge of untreated human waste. At other outfalls, laboratory samples were not obtained because site-specific odor and visual observations by Defendant's representatives established the illicit discharges of untreated sewage without the need for laboratory analysis.

14

65. *E. coli*, fecal coliform, fecal streptococci, and nitrogen and phosphorous compounds show the likely presence of other pathogenic bacteria, viruses, and protozoans found in sewage. Exposure to these pathogens through, for example, recreational activities (swimming, wading, or fishing) can cause serious health effects, such as fever, intestinal disease, and hepatitis A. To illustrate, *E. coli* can cause vomiting, diarrhea, infection of the eyes, ears, or throat, skin irritations, and infection in young children and elderly adults can lead to kidney failure. Nitrogen and phosphorous pollution cause algal blooms that severely reduce or eliminate oxygen in the water, leading to illness in or death of fish.

66. Thousands of on-site sewage disposal systems are connected to and discharging to the MS4. Each connection constitutes an illicit connection to Defendant's MS4 and contributes to illicit discharges because these on-site sewage disposal systems are discharging non-storm water containing various pollutants, including sewage, into the MS4 in violation of the NPDES Permit and the CWA. The largest sources of illicit discharges from the MS4 are home sewage treatment systems (HSTSs), such as aerators.

67. All of these discharges violate the NPDES Permit, the CWA, and threaten human health and welfare, including Plaintiff's health and welfare.

68. For example, there are homes with HSTSs illicitly connected to the MS4 on Plaintiff's street, West Kanawha Avenue, and the next street north, Rosslyn Avenue. Defendant has not eliminated the illicit connections on West Kanawha or Rosslyn Avenues, in violation of the NPDES Permit and the CWA.

69. Mr. Cox has, since he moved into his home in April 2016, been subjected to noxious sewage odors and gases frequently emitted from the curb inlets a mere 50 feet from his property. These curb inlets are connected to the storm sewer. The noxious sewage odors and

gases have invaded his home and have forced him and his wife, on multiple occasions, to leave their home until the odors lessened in intensity. Before moving to West Kanawha Avenue, Mr. Cox spent much of his time outdoors biking and walking in his neighborhood. Since moving to West Kanawha Avenue, he has sharply curtailed biking and walking in his neighborhood because the noxious sewage odors and gases make him nauseated and otherwise result in material physical discomfort.

70.     At his previous home, Mr. Cox enjoyed spending time outside on his patio, cooking outdoors, and doing yard work. Due to the noxious sewage odors and gases emanating from Defendant's MS4, Mr. Cox does not use the patio at his West Kanawha Avenue home and does not cook outside nearly as often as he used to at his previous home. Attempts at yardwork are abandoned when the noxious sewage odors and gases become too intense.

71.     Mr. Cox is dismayed at being unable to play with his grandson, who visits weekly or more, outside at his West Kanawha Avenue home because he cannot stand to be outside when noxious sewage odors are present.

72.     Because of Defendant's past and continuing illicit discharges from the MS4 and programmatic deficiencies, Mr. Cox has sharply curtailed his use and enjoyment of the streams, rivers, and creeks in Franklin County. Previously, Mr. Cox spent thousands of hours volunteering by organizing and participating in clean-up activities on the Olentangy River, Alum Creek, and Blacklick Creek. Mr. Cox participated in testing the waters at various locations along the Olentangy River, Alum Creek, and Blacklick Creek where clean-up activities were to occur. Because testing of all these water bodies showed pathogen counts at levels higher than acceptable for recreational uses, Mr. Cox and other organizers warned potential volunteers of the risk of exposure to the harmful bacteria. Upon learning this risk, many volunteers declined to

participate in clean-up activities. Illicit discharges from the MS4, including illicit discharges of sewage, contributed to, and continue to contribute to, the high bacteria counts. Further, Mr. Cox, who was on one of these water bodies on a weekly basis for several years, was exposed to harmful levels of pathogens.

## CLAIMS FOR RELIEF

73.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

74.     Defendants have violated, are violating, and will continue to violate the effluent standards and limitations in the NPDES Permit and the CWA after this Complaint is filed. Due to the violations set forth in the First through Ninth Claims for Relief in this Complaint, Plaintiff is entitled to injunctive relief and litigation costs under 33 U.S.C. § 1365. Further, this Court should issue an order requiring Defendant to pay civil penalties.

### First Claim for Relief - Failure to trace and locate sources of non-storm water discharged from outfalls and failure to eliminate those sources

75.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

76.     The NPDES Permit requires Defendant to trace, locate, and eliminate illicit discharges, including illegal dumping, to the MS4 detected through dry weather screening. These illicit discharges result in the discharges of sewage and other pollutants into the MS4 and, then, into various rivers, streams, and other waters of the United States.

77.     These requirements are each an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

17

78. Defendant has detected illicit discharges from numerous outfalls from the MS4 system, including, at least, the following outfalls: PI-06-BL-0669; PI-06-BL-0672; PI-06-BL-0673; PI-06-BL-0677; PI-06-BR-0033; PI-06-BR-0296; PI-06-BR-0297; PI-06-BR-0358; PI-06-BR-0734; PI-06-CL-0574; PI-06-CL-0575; PI-06-FR-0161; PI-06-FR-0168; PI-06-FR-0172; PI-06-FR-0182; PI-06-FR-0262; PI-06-FR-0266; PI-06-FR-0271; PI-06-FR-0354; PI-06-FR-2227; PI-06-FR-2361; PI-06-HA-0801; PI-06-HA-0802; PI-06-HA-0805; PI-06-JA-0317; PI-06-JA-0323; PI-06-JA-0325; PI-06-JA-0600; PI-06-JA-0761; PI-06-JA-0762; PI-06-JA-0764; PI-06-JA-0765; PI-06-JA-0772; PI-06-JA-0785; PI-06-JA-0855; PI-06-MA-0794; PI-06-MA-0796; PI-06-MA-0809; PI-06-MA-0877; PI-06-MA-0882; PI-06-MA-0887; PI-06-MA-0899; PI-06-MA-0901; PI-06-MA-3088; PI-06-MI-0525; PI-06-MI-0552; PI-06-MI-0556; PI-06-MI-0558; PI-06-MI-0559; PI-06-MI-0586; PI-06-MI-0587; PI-06-MI-0593; PI-06-MI-0643; PI-06-MI-0649; PI-06-MI-0650; PI-06-NO-0062; PI-06-NO-0109; PI-06-NO-0110; PI-06-NO-0138; PI-06-NO-0139; PI-06-NO-0387; PI-06-NO-0388; PI-06-NO-0402; PI-06-NO-0413; PI-06-NO-2200; PI-06-PE-0478; PI-06-PE-0494; PI-06-PE-0501; PI-06-PE-0510; PI-06-PE-0511; PI-06-PE-0747; PI-06-PE-2640; PI-06-PN-0442; PI-06-PN-0448; PI-06-PR-0188; PI-06-PR-0195; PI-06-PR-0229; PI-06-PR-0331; PI-06-PR-0363; PI-06-PR-0393; PI-06-SH-0629; PI-06-SH-0630; PI-06-SH-0631; PI-06-SH-0633; PI-06-SH-0634; PI-06-SH-0637; PI-06-SH-0638; PI-06-SH-0639; PI-06-SH-2725; PI-06-WA-0050; PI-06-WA-0055; PI-06-WA-0056; PI-07-CL-0247; PI-07-CL-2573; PI-07-FR-0035; PI-07-FR-0081; PI-07-FR-0087; PI-07-FR-0088; PI-07-FR-0090; PI-07-FR-0094; PI-07-FR-0100; PI-07-FR-0103; PI-07-FR-0125; PI-07-FR-0196; PI-07-FR-2193; PI-07-JA-0146; PI-07-JA-0148; PI-07-MA-0232; PI-07-MI-0245; PI-07-MI-0248; PI-07-MI-2569; PI-07-MI-2582; PI-07-PE-2501; PI-07-PR-0054; PI-07-SH-2554; PI-07-SH-2562; PI-07-SH-2563; PI-07-TR-2587; PI-08-FR-0038; PI-08-MI-0019; PI-08-MI-0020; PI-08-MI-0021; PI-08-

PE-0002; PI-08-PT-0152; PI-08-PT-0203; PI-08-PT-0204; PI-09-FR-0329; PI-09-NO-0034; PI-09-PT-0383; PI-09-PT-0389; PI-10-FR-0093; PI-10-FR-0097; PI-10-FR-3296; PI-10-JA-0074; PI-10-JA-0089; PI-10-MI-0105; PI-11-FR-0218; PI-11-JA-0206; PI-11-JA-0207; PI-11-PR-0211; PI-11-SH-0215; PI-12-JE-0078; PI-12-PN-2197a; PI-12-PN-2198a; PI-12-PN-2287a; PI-12-SH-3967; PI-13-JE-00039; PI-13-JE-00098; PI-13-JE-00099; PI-13-JE-00130; PI-14-BL-0012; PI-14-BL-0020; PI-17-FR-0016; PI-17-FR-0049; PI-17-FR-0058; PI-17-JA-0063; PI-17-JE-0008; PI-17-JE-0017; PI-17-JE-0071; PI-17-JE-0075; PI-17-JE-2058; PI-17-PN-2013; and PI-17-TR-0088.

79.     Despite detecting illicit discharges from the outfalls listed above, Defendant has failed to trace, locate, and eliminate sources of those illicit discharges. Each such day that Defendant has failed and continues to fail to trace, locate, and eliminate sources of illicit discharges to the MS4 results in the continued discharge of sewage and other pollutants and violates the CWA and the NPDES Permit. Each such day is a separate violation of the CWA and the NPDES Permit.

80.     These violations have occurred every day for, at a minimum, the past 5 years and continue to occur daily. Such violations will continue if the relief requested is not granted.

### Second Claim for Relief - Violations of the CWA and NPDES Permit for failing to eliminate known illicit discharges to the MS4

81.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

82.     The NPDES Permit requires the detection and elimination of illicit discharges to the MS4.

83.    This requirement is an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

84.    Since, at least, 2009 Defendant has known of thousands of illicit connections, including homes on Plaintiff's street and other nearby streets, that are illicitly connected to and illicitly discharging sewage and other pollutants to the MS4. To date, Defendant has not eliminated these illicit connections, in violation of the NPDES Permit and the CWA. These violations have occurred every day for, at a minimum, the past 5 years and continue to occur daily. Each such day Defendant has failed to eliminate these known illicit discharges to the MS4 is a separate violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested is not granted.

**Third Claim for Relief - Violations of the CWA and NPDES Permit for discharges mixed with sources of non-storm water**

85.    Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

86.    The NPDES Permit's prohibition against "discharges that are mixed with sources of non-storm water" into the MS4 is an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

87.    Dry weather field screening of MS4 outfalls has revealed unpermitted discharges, including sewage, from numerous outfalls, including from, at least, the following outfalls: PI-06-BL-0669; PI-06-BL-0672; PI-06-BL-0673; PI-06-BL-0677; PI-06-BR-0033; PI-06-BR-0296; PI-06-BR-0297; PI-06-BR-0358; PI-06-BR-0734; PI-06-CL-0574; PI-06-CL-0575; PI-06-FR-0161; PI-06-FR-0168; PI-06-FR-0172; PI-06-FR-0182; PI-06-FR-0262; PI-06-FR-0266; PI-06-FR-0271; PI-06-FR-0354; PI-06-FR-2227; PI-06-FR-2361; PI-06-HA-0801; PI-06-HA-0802; PI-06-

20

HA-0805; PI-06-JA-0317; PI-06-JA-0323; PI-06-JA-0325; PI-06-JA-0600; PI-06-JA-0761; PI-

06-JA-0762; PI-06-JA-0764; PI-06-JA-0765; PI-06-JA-0772; PI-06-JA-0785; PI-06-JA-0855;

PI-06-MA-0794; PI-06-MA-0796; PI-06-MA-0809; PI-06-MA-0877; PI-06-MA-0882; PI-06-

MA-0887; PI-06-MA-0899; PI-06-MA-0901; PI-06-MA-3088; PI-06-MI-0525; PI-06-MI-0552;

PI-06-MI-0556; PI-06-MI-0558; PI-06-MI-0559; PI-06-MI-0586; PI-06-MI-0587; PI-06-MI-

0593; PI-06-MI-0643; PI-06-MI-0649; PI-06-MI-0650; PI-06-NO-0062; PI-06-NO-0109; PI-06-

NO-0110; PI-06-NO-0138; PI-06-NO-0139; PI-06-NO-0387; PI-06-NO-0388; PI-06-NO-0402;

PI-06-NO-0413; PI-06-NO-2200; PI-06-PE-0478; PI-06-PE-0494; PI-06-PE-0501; PI-06-PE-

0510; PI-06-PE-0511; PI-06-PE-0747; PI-06-PE-2640; PI-06-PN-0442; PI-06-PN-0448; PI-06-

PR-0188; PI-06-PR-0195; PI-06-PR-0229; PI-06-PR-0331; PI-06-PR-0363; PI-06-PR-0393; PI-

06-SH-0629; PI-06-SH-0630; PI-06-SH-0631; PI-06-SH-0633; PI-06-SH-0634; PI-06-SH-0637;

PI-06-SH-0638; PI-06-SH-0639; PI-06-SH-2725; PI-06-WA-0050; PI-06-WA-0055; PI-06-WA-

0056; PI-07-CL-0247; PI-07-CL-2573; PI-07-FR-0035; PI-07-FR-0081; PI-07-FR-0087; PI-07-

FR-0088; PI-07-FR-0090; PI-07-FR-0094; PI-07-FR-0100; PI-07-FR-0103; PI-07-FR-0125; PI-

07-FR-0196; PI-07-FR-2193; PI-07-JA-0146; PI-07-JA-0148; PI-07-MA-0232; PI-07-MI-0245;

PI-07-MI-0248; PI-07-MI-2569; PI-07-MI-2582; PI-07-PE-2501; PI-07-PR-0054; PI-07-SH-

2554; PI-07-SH-2562; PI-07-SH-2563; PI-07-TR-2587; PI-08-FR-0038; PI-08-MI-0019; PI-08-

MI-0020; PI-08-MI-0021; PI-08-PE-0002; PI-08-PT-0152; PI-08-PT-0203; PI-08-PT-0204; PI-

09-FR-0329; PI-09-NO-0034; PI-09-PT-0383; PI-09-PT-0389; PI-10-FR-0093; PI-10-FR-0097;

PI-10-FR-3296; PI-10-JA-0074; PI-10-JA-0089; PI-10-MI-0105; PI-11-FR-0218; PI-11-JA-

0206; PI-11-JA-0207; PI-11-PR-0211; PI-11-SH-0215; PI-12-JE-0078; PI-12-PN-2197a; PI-12-

PN-2198a; PI-12-PN-2287a; PI-12-SH-3967; PI-13-JE-00039; PI-13-JE-00098; PI-13-JE-00099;

PI-13-JE-00130; PI-14-BL-0012; PI-14-BL-0020; PI-17-FR-0016; PI-17-FR-0049; PI-17-FR-

0058; PI-17-JA-0063; PI-17-JE-0008; PI-17-JE-0017; PI-17-JE-0071; PI-17-JE-0075; PI-17-JE-2058; PI-17-PN-2013; and PI-17-TR-0088. These illicit discharges have caused or contributed, and are causing and contributing, to ongoing water quality problems and public health concerns, including health concerns to Plaintiff.

88.     These outfalls are point sources under the Clean Water Act, and all discharge to waters of the United States and the State of Ohio.

89.     Because Defendant has failed to trace, locate, and eliminate illicit discharges, including illegal dumping, to the MS4, including from, at least, the outfalls listed above, in Paragraph 87, these unpermitted discharges continue. Each instance of an unpermitted discharge violates the CWA and the NPDES Permit. These violations have occurred every day for, at a minimum, the past 5 years and continue to occur daily, so long as, *e.g.*, toilets continue to be flushed. Such violations will continue if the relief requested is not granted.

## Fourth Claim for Relief - Failure to develop the legally mandated map

90.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

91.     The NPDES Permit requires development of a comprehensive storm sewer map showing the location of all outfalls, the names and location of all surface waters of the State that receive discharges from those outfalls, and the entire MS4 system. The NPDES Permit also requires this map to show the location of all HSTSs connected to the MS4.

92.     This requirement is an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

93.     The deadline for completing this map was 2008. Defendant has not completed this map. Each day Defendant fails to have a complete map is a violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested herein is not granted.

**Fifth Claim for Relief - Failure to effectively prohibit illicit discharges into the MS4 through ordinance or other regulatory mechanism**

94.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

95.     The NPDES Permit requires illicit discharges to be effectively prohibited, through ordinance or other regulatory mechanism, and that appropriate enforcement procedures and actions be implemented.

96.     This requirement is an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

97.     The deadline for meeting this requirement was 2008. The regulatory mechanisms adopted by Defendant do not prohibit illicit discharges and illegal connections to the MS4 and thus violate the NPDES requirements. Each day Defendant fails to effectively prohibit illicit discharges and implement appropriate enforcement procedures results in the discharge of sewage and other pollutants to the MS4 and is a violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested is not granted.

**Sixth Claim for Relief - Failure to create and submit to Ohio EPA a list of all on-site sewage disposal systems connected to discharge to the MS4 system**

98.     Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

99.    The NPDES Permit requires Defendant to submit to Ohio EPA a list of all on-site sewage disposal systems connected to discharge to the MS4, including addresses of the systems.

100.    This requirement is an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

101.    The deadline for submitting this list was 2008. Defendant has not submitted this list to Ohio EPA. Each day Defendant fails to submit this list is a violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested is not granted.

**Seventh Claim for Relief - Failure to reduce pollutants to the maximum extent practicable**

102.    Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

103.    The CWA requires controls and measures to reduce the discharge of pollutants from the MS4 to the maximum extent practicable (MEP) to protect water quality and to satisfy the appropriate water quality requirements of RC Chapter 6111 and the CWA. The NPDES Permit also requires development, implementation, and enforcement of an SWMP "designed to reduce the discharge of pollutants from [the] MS4 to the maximum extent practicable (MEP), to protect water quality, and to satisfy the appropriate water quality requirements of [RC Chapter 6111] and the Clean Water Act."

104.    These requirements are each an effluent standard or limitation under 33 U.S.C. § 1365(f)(1) and (6).

105.    As evidenced by the violations described above, Defendant has, for at least the past 5 years, violated the mandates of the CWA and the NPDES Permit that it reduce the discharge of pollutants from its MS4 to the maximum extent practicable and has, instead, allowed discharge of sewage and other pollutants from its MS4. Each day Defendant fails to

reduce the discharge of pollutants from its MS4 to the maximum extent practicable is a violation of the CWA and the NPDES Permit, and each day is a separate and distinct violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested is not granted.

**Eighth Claim for Relief - Programmatic violations related to the Stormwater Management Program (SWMP)**

106.    Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

107.    The NPDES Permit requires development of a written SWMP and specifies the required content of this document, including these provisions or items: a copy of the completed map of the MS4; ensure that the map is updated within one year whenever the system expands because of annexation or expansion of the urbanized area; an address list and map of sewage treatment systems which discharge into the MS4; describe the mechanism by which the address list and map are updated; identify who is responsible for performing updates; include a mechanism to track sources of illicit discharge not removed by the end of the reporting year and develop a site-specific source elimination plan; a maintenance schedule for maintaining publicly-owned permanent water quality practices; adequately describe the processes and timeframes for notifying property owners of long-term maintenance problems; a schedule for employee training; identify the NPDES facility permit number or No Exposure Certification associated with each municipal facility subject to industrial storm water permitting; a copy of the Storm Water Pollution Prevention Plans for facilities with their own NPDES permits; a maintenance schedule for the MS4; and identify pollution prevention practices for road kill management, mulch manufacturing, and water and power line repairs and maintenance.

108.    These requirements are effluent standards or limitations under 33 U.S.C. § 1365(f)(1) and (6).

109.    Each day since at least December 19, 2016, Defendant has failed to include all of the required content, specifically the content listed in Paragraph 107, above. Each of the required plan components above, if implemented, contribute to the goal and mandate of the CWA and NPDES Permit that illicit discharges be located and eliminated and pollutants discharged from the MS4 be reduced to the maximum extent practicable. Each day Defendant fails to have a compliant written program is a violation of the CWA and the NPDES Permit. Such violations will continue if the relief requested is not granted.

**Ninth Claim for Relief - Programmatic violations related to the Illicit Discharge Detection and Elimination (IDDE) program**

110.    Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

111.    The NPDES Permit requires development of a written IDDE program and specifies the required content of this document, including provisions for the active investigation of the sources of contamination in outfalls identified during dry weather screening and provisions to trace, locate, and eliminate illicit discharges.

112.    These requirements are effluent standards or limitations under 33 U.S.C. § 1365(f)(1) and (6).

113.    Each day since at least November 25, 2013, Defendant has failed to include the required provisions for the active investigation of the sources of contamination in outfalls identified during dry weather screening and to trace, locate, and eliminate illicit discharges, as defined in Part VI of the NPDES Permit. Each day Defendant fails to have a compliant written

program is a violation of the CWA and the NPDES Permit and results in the illicit discharge of sewage and other pollutants to and from the MS4. Such violations will continue if the relief requested is not granted.

**Tenth Claim for Relief - Negligence**

114.    Each allegation contained in the above paragraphs is incorporated by reference as if set forth herein.

115.    At all times relevant herein, the Defendant had and has a duty to operate and maintain its MS4 according to a reasonable standard of care and in accordance with federal and state law, expressly including the federal Clean Water Act and its NPDES Permit. Defendants breached the applicable standards of care in its operation and maintenance of its MS4 by failing to: (a) prevent and remedy the illicit discharges, including discharges of sewage and other pollutants into and from its MS4, in direct violation of water laws and its NPDES permit; (b) otherwise operate and maintain its MS4 in accordance with law, including the Clean Water Act and its NPDES permit;  (c) operate and maintain its MS4 in a manner that does not interfere with or adversely affect the Plaintiff's use and enjoyment of his property; (d) operate and maintain its MS4 in a manner that does not result in annoyance and discomfort to Plaintiff; and (e) advise the potentially affected members of the public, including the Plaintiff, of the foreseeable threats to health and the environment associated with its illicit discharges from and into the MS4.

116.    The Defendant has negligently, wantonly, and/or recklessly breached, and continues to breach, through the filing of this complaint, the duties outlined above, including by operating its MS4 in violation of its NPDES Permit and federal and state water laws, leading to repeated and ongoing occurrences in which Plaintiff's use and enjoyment of his property are interfered with, Plaintiff suffers annoyance and discomfort, and suffers repeated occurrences of

27

harm. Each new occurrence is both a new violation and a new negligent act, including negligent creation and maintenance of a nuisance, for which damages lie, and the violations and negligent acts are ongoing and will continue to recur. Defendant continues to exercise control over its MS4 but fails to remedy the breaches and harm that are ongoing.

117.    As a direct and proximate result of the Defendant's negligent operation and maintenance of its MS4, the Plaintiff has suffered a loss of use and enjoyment of his property, economic damages (including loss of value of his real property), annoyance and discomfort, including material physical discomfort, and sustained the other injuries and damages described herein. These damages are ongoing and are reasonably certain to continue. The Defendant is liable for all of said direct and consequential damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court issue and order and enter a judgment:

a.  Declaring that Defendant has violated and is violating the CWA;

b.  Declaring that Defendant has violated and is violating the terms of the NPDES Permit as set forth above;

c.  Enjoining Defendant to promptly take all steps necessary to comply with the CWA and NPDES Permit;

d.  Assessing CWA civil penalties against Defendant;

e.  Granting Plaintiff the right and funding to have expert oversight over all relief granted by the Court;

f.  Retaining jurisdiction over this action to ensure compliance with and to oversee implementation of this Court's Order;

g.   Awarding past and future Plaintiff damages for loss of use and enjoyment, diminution of

real property, annoyance and discomfort, and all other damages that proximately result

from Defendant's negligent operation and maintenance of its MS4;

h.   Awarding Plaintiff his costs of litigation, including reasonable attorneys' fees and expert

witness fees; and

i.   Granting such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury for all the issues so triable.


Respectfully submitted,

s/ D. David Altman

D. David Altman (0021457), *Trial Attorney*
Justin D. Newman (0080968)
Robin A. Burgess (0096442)
*AltmanNewman Co. LPA*
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
Fax: (513) 721-2299
daltman@environlaw.com
*Attorneys for Plaintiff Cox*