# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEFFERY COX,**

    **Plaintiff,**

  v.                                                                **Civil Action 2:18-cv-1631**
                                                                                  **Judge James L. Graham**
                                                                                  **Magistrate Judge Jolson**

**FRANKLIN COUNTY BOARD**
**OF COMMISSIONERS,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on a discovery dispute between Plaintiff and a third party, the Ohio Environmental Protection Agency (the "Ohio EPA"). In response to a third-party subpoena, the Ohio EPA withheld a limited number of related documents (the "Penalty Calculation") from Plaintiff, and Plaintiff now seeks to compel their production. For the reasons that follow, the Ohio EPA shall produce the Penalty Calculation to Plaintiff on or before December 17, 2019.

## I. BACKGROUND

The following background is taken from the allegations in Plaintiff's Complaint: Plaintiff is a resident of Franklin County. (Doc. 1, ¶ 20). After moving into his home in 2016, he observed that "noxious sewage odors and gases frequently and without warning are emitted from the curb inlets connected to the storm sewer" near his home. (*Id.*). Defendant Franklin County Board of Commissioners is a statutory subdivision of the State and "is the authority to establish and manage a system of sewers, including storm water sewers, under RC Chapter 6117, in the unincorporated

areas of Franklin County." (*Id.*, ¶ 29). "Under this authority, Franklin County owns and operates" the storm sewer at issue, MS4. (*Id.*).

Through investigation, Plaintiff determined that "thousands of illicit discharges to the MS4 are discharging various pollutants into the MS4." (*Id.*, ¶ 22). "The largest sources of illicit discharges from the MS4 are home sewage treatment systems (HSTSs), such as aerators." (*Id.*, ¶ 66). "All of these discharges violate," among other things, the Clean Water Act. (*Id.*, ¶ 67).

Plaintiff presented the results of his investigation to Defendant and the Ohio EPA. (*Id.*, ¶ 2). Defendant subsequently sued the Ohio EPA in state court (the "State Court Action"), and those government entities entered into a consent decree, which Plaintiff maintains is inadequate. (*Id.*, ¶ 3). Plaintiff filed the instant action to remedy those alleged inadequacies.

During discovery, the Ohio EPA identified one of its employees, Larry Reeder, as an individual "who would have information regarding the de minimis civil penalty included by the Ohio EPA and Defendant in [their] proposed consent decree." (Doc. 40 at 1–2). Prior to Mr. Reeder's deposition, Plaintiff served the Ohio EPA with a third-party subpoena requesting documents regarding any evaluation or calculation of a civil penalty to be applied to Defendant. (*See* Doc. 40-2 at 5–6). At the deposition, the Ohio EPA informed Plaintiff that it was withholding Mr. Reeder's penalty calculation (the "Penalty Calculation") as privileged, and Plaintiff contested that assertion of privilege. (Doc. 40-1, 18:23–19:11). Plaintiff and the Ohio EPA were unable to resolve their dispute through the meet and conferral process, and the Court ordered them to submit position statements setting out their respective arguments. (Doc. 38). They have now submitted their position statements, and their dispute is ripe for resolution.

## II. STANDARD OF REVIEW

"Determining the proper scope of discovery falls within the broad discretion of the trial court." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Under Rule 26(b) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

And, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "Once the party requesting discovery establishes relevance," the party invoking the protections of the work-product doctrine, "has the burden of showing that the material was 'prepared in anticipation of litigation or for trial.'" *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006) (quoting *Toledo Edison Co. v. G.A. Tech., Inc.*, 847 F.2d 335, 339 (6th Cir. 1988)). "If that burden is not met, the court's inquiry ends and the documents must be produced." *Powerhouse Licensing*, 441 F.3d at 473 (citing *Toledo Edison*, 847 F.2d at 339).

## III. DISCUSSION

The Ohio EPA presents two arguments in opposition to Plaintiff's request for the Penalty Calculation. First, it argues that the Penalty Calculation is not relevant to the issues in this case. (Doc. 39 at 3–4). Second, the Ohio EPA asserts that the work-product doctrine protects the Penalty Calculation from disclosure because it "was generated solely at the request of and for an attorney within the Ohio EPA." (*Id.* at 1; *see also id.* at 1–2).

A. **Relevance**

Turning first to the relevance question, the Court finds that Plaintiff has met its burden here. Relevance is a liberal standard. *See* Fed. R. Evid. 401. Mr. Reeder calculated a penalty for Defendant's alleged violations of state law based on "the harm or the threat of harm to human health … and/or the environment, recalcitrance of the entity, and economic benefit." (Doc. 40-1, 28:10–21). In analyzing these factors, Mr. Reeder made factual assumptions based on the allegations in the complaint in the State Court Action. (*Id.*, 29:10–15). A comparison of the Complaint in this case with the complaint in the State Court Action demonstrates considerable factual overlap. (*Compare* Doc. 1 *with State of Ohio ex rel. Michael DeWine*, 18-cv-8695, Complaint (Franklin County C.P. Oct. 17, 2018)). As a result, the Penalty Calculation is relevant to one of the central issues in Plaintiff's Complaint: whether Defendant's alleged actions (or lack thereof) have harmed or threatened to harm human health and/or the environment. (*See, e.g.*, Doc. 40-1, 39:24–40:23 (testifying that the Penalty Calculation reflected "moderate" environmental harm as a result of Defendant's alleged actions)).

Moreover, Plaintiff argues, "the consent decree and the civil penalty" in the State Court Action "are likely to be a key part of Franklin County's arguments that the consent decree resolves portions of" the instant action; discovery of the Penalty Calculation is, therefore, "needed for Plaintiff to meet this defense and show that, for example, Ohio EPA relied on inaccurate 'facts' or assumptions about violations as part of the civil penalty analysis." (Doc. 40 at 2). Consequently, the Penalty Calculation is relevant under Rule 401's liberal standard.

B. **Work-Product**

The Ohio EPA argues that, even if the Penalty Calculation is relevant, it is protected from disclosure by the work-product doctrine. "The work-product doctrine protects an attorney's trial

preparation materials from discovery to preserve the integrity of the adversarial process." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–14 (1947)). "Work product consists of the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions." *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) (citing *Hickman*, 329 U.S. at 511). At base, "[t]he privilege creates a zone of privacy in which an attorney can investigate, prepare, and analyze a case." *Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d at 935.

Rule 26(b)(3), therefore, protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative." *Professionals Direct Ins.*, 578 F.3d at 438 (quoting *Powerhouse Licensing*, 441 F.3d at 438). As this Court has recognized, "[u]nder the Federal Rules, the work product protection under Rule 26(b)(3) is not limited to attorneys, but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-CV-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019) (quoting *Shah v. Metro. Life Ins. Co.*, No. 2:16-cv-1124, 2017 WL 5712562, at *4 (S.D. Ohio Nov. 27, 2017)).

"To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product," courts "ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *Prof'ls Direct Ins.*, 578 F.3d at 439 (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). "If

a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection." *Prof'ls Direct Ins.*, 578 F.3d at 439 (citing *Roxworthy*, 457 F.3d at 598–99). "[B]ut the burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Prof'ls Direct Ins.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 595). A party invoking the work-product privilege "may satisfy its burden of showing anticipation of litigation 'in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories[.]'" *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison*, 847 F.2d at 339).

Turning to the issue at hand, the Court concludes that the record is too thin to find conclusively that the Ohio EPA has met its burden to show that the Penalty Calculation is protected by the work-product doctrine. First, basic principles of privilege law cause the Court to be skeptical of the Ohio EPA's privilege arguments. Underlying facts are not protected by the work-product doctrine. *See Grissom v. Illinois Cent. R. Co.*, No. 5:14-CV-00022-TBR, 2014 WL 4999204, at *6 (W.D. Ky. Oct. 7, 2014) (citing *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000)) ("Of course, the work-product doctrine does not protect underlying facts from disclosure."); *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)) ("[N]either the attorney-client privilege nor the work product doctrine applies to prevent the disclosure of underlying facts, regardless of who obtained those facts."). And here the Ohio EPA has not shown that the Penalty Calculation reflects anything but factual content from the publicly available complaint in the State Court Action and the application of a standardized form to those facts.

Without more from the Ohio EPA, the Court is hesitant to conclude that the contents of the Penalty Calculation are protected from disclosure by the work-product doctrine.

Second, the Ohio EPA bears the burden "to show that anticipated litigation was the driving force behind the preparation of" the Penalty Calculation. *Prof'ls Direct Ins.*, 578 F.3d at 439 (citations and quotations omitted). But the Ohio EPA offers only a conclusory statement without citation to the record in its brief in a failed attempt to satisfy its burden. (*See* Doc. 39 at 2 ("Nor is it debatable that the document was created in anticipation of litigation, since it was created in the context of the parties negotiating a consent order to resolve a lawsuit.")). As the Sixth Circuit has told us, "conclusory statements" are insufficient to meet an objecting party's evidentiary burden. *Roxworthy*, 457 F.3d at 597 (citations and quotations omitted). This is true because, in order to determine "the function that the document serves," a court must be able to examine "the circumstances surrounding the documents' creation." *Id.* at 595. Conclusory statements lack the necessary information for the Court to determine whether the anticipation of litigation was "the driving force behind the preparation of" the Penalty Calculation. *Prof'ls Direct Ins.*, 578 F.3d at 439 (citations and quotations omitted).

The Ohio EPA could have shown that anticipated litigation was the driving force behind the preparation of the Penalty Calculation through an affidavit or deposition testimony providing specific details regarding its preparation. But, on the record before the Court now, they have not done so. As a result, the Ohio EPA's work-product doctrine argument fails. Ordinarily, the Court would hold an evidentiary hearing to provide a party, like the Ohio EPA, a chance to meet its burden. Even assuming, however, that the work-product doctrine protects the Penalty Calculation from disclosure, as explained below, the Court would still require its production.

### C. Waiver and Federal Rule of Evidence 612

First, Mr. Reeder's testimony at his deposition waived the protection of the work-product doctrine. The purpose of the work-product doctrine is "to preserve the integrity of the adversarial process." *Prof'ls Direct Ins.*, 578 F.3d at 438 (citing *Hickman*, 329 U.S. at 510–14). A party "may waive … work-product protection 'by conduct which implies a waiver of the privilege or a consent to disclosure.'" *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010) (quoting *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294, 304 n.24 (6th Cir. 2002)). "[M]ost courts hold that to waive the protection of the work product doctrine, the disclosure must enable an adversary to gain access to the information." *In re Columbia/HCA Healthcare Corp.*, 192 F.R.D. 575, 579 (M.D. Tenn. 2000), *aff'd sub nom. In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424–26 (3d Cir. 1991)); *see also In re Columbia/HCA Healthcare Corp.*, 192 F.R.D. at 579 (citing *Westinghouse Elec.*, 951 F.2d at 1430) (holding that "giving work product to an adversary conflicts with the purpose of the work product doctrine and constitutes a waiver").

Here, Mr. Reeder testified at length about the Penalty Calculation, discussing, among other things: (1) the factors he considered, (*see, e.g.*, Doc. 40-1, 28:10–21); (2) the process by which he calculated the penalty, (*see, e.g.*, *id.*, 28:22–29:15); (3) facts and assumptions that he relied on in completing the Penalty Calculation (*see, e.g.*, *id.*, 66:11–73:11); and (4) the ultimate penalty he recommended, (*id.*, 25:10–18). In other words, Mr. Reeder's testimony "enabled an adversary to gain access to the information," *In re Columbia/HCA Healthcare Corp.*, 192 F.R.D. at 579 (citation and quotations omitted), that the Ohio EPA now seeks to protect by claiming it is protected by the work-product doctrine. But the Ohio EPA waived that privilege here. *See id.*

Second, Federal Rule of Evidence 612 requires the disclosure of the Penalty Calculation. It "provides that a Court can require the production of a document used to refresh a witness's memory if justice so requires." *United States v. Life Care Ctrs. of Am., Inc.*, No. 1:08-CV-251, 2015 WL 10987030, at *3 (E.D. Tenn. Apr. 29, 2015) (citing Fed. R. Evid. 612(a); *K & S Assocs., Inc. v. Am. Ass'n of Physicists in Med.*, 2012 WL 4364087, at *3 (M.D. Tenn. Sept. 21, 2012)). While the rule does not "bar[] the assertion of privilege with respect to writings used by a witness to refresh his memory," Fed. R. Evid. 612(a) 1974 advisory committee notes cmt, it does not "expressly exempt privileged matter from disclosure" either, *Life Care Ctrs. of Am.*, 2015 WL 10987030, at *3 (quoting *Parry v. Highlight Indus., Inc.*, 125 F.R.D. 449, 452 (W.D. Mich. 1989)). This creates a tension between Rule 612 and privilege law, which is generally resolved "by balancing the competing principles underlying both …" 28 Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 6188 (2d ed. 2019); *see also Life Care Ctrs. of Am.*, 2015 WL 10987030, at *3 (quoting *In re Comair Air Disaster Litig.*, 100 F.R.D. 350, 353 (E.D. Ky. 1983)) ("[W]hen examining FRE 612 along with the work product doctrine, a court is required to consider the 'conflict between the policies underlying the work product doctrine and the concept of free and well informed cross-examination as an assistance to the ascertainment of the truth, which is the policy underlying Rule 612.'").

Here, Mr. Reeder reviewed the Penalty Calculation three times prior to his deposition, including the night before and the morning of the deposition. (Doc. 40-1, 21:2–6). He testified that he reviewed the Penalty Calculation to remind himself how he performed the calculation and that he did not review any other documents in preparation for the deposition. (*Id.*, 21:7–16). Although he testified at length regarding his calculations, Mr. Reeder's testimony suggests that he could not explain fully those calculations without the Penalty Calculation itself. (*See, e.g.*, *id.*,

9

43:13–18). Under these circumstances, the Court concludes that the production of the Penalty Calculation would advance the interests of justice. *See Life Care Ctrs. of Am.*, 2015 WL 10987030, at *3 (identifying "[f]actors that can be considered when determining whether the interests of justice require disclosure"); 8 Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 6188 (2d ed. 2019) (identifying factors weighing for and against disclosure of privileged materials under Rule 612).

Finally, Plaintiff's additional waiver arguments appear to have merit. Plaintiff represents that the Ohio EPA (1) failed to object on the grounds of privilege in response to his requests for production and (2) failed to prepare and produce a privilege log, both in violation of Rule 45. Both of these failures are independent grounds for finding waiver of the work-product protection. *See, e.g.*, *In re Grand Jury Subpoena*, 274 F.3d 563, 575–76 (1st Cir. 2001) (citations omitted) (holding that the "the operative language [of Rule 45] is mandatory and … courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log … A party that fails to submit a privilege log is deemed to waive the underlying privilege"); *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-292, 2016 WL 4920773, at *2 (S.D. Ohio Sept. 15, 2016) (holding that, because third-party failed to comply with Rule 45(e)(2)(A)(ii), "the Court cannot sustain its claim of privilege, and it will enforce the subpoena"); *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citations omitted) ("The failure to serve written objections to a subpoena within the time specified by Rule 45 typically constitutes a waiver of such objections.").

## IV.   CONCLUSION

For the foregoing reasons, the Ohio EPA shall produce the Penalty Calculation to Plaintiff on or before December 17, 2019.

IT IS SO ORDERED.

Date: December 10, 2019                    /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE