IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jeffery Cox,

              Plaintiff,

v.

Board of County Commissioners
of Franklin County, Ohio,

              Defendants.

Case No. 2:18-cv-1631

Judge Graham

Magistrate Judge Jolson

Opinion and Order

Plaintiff Jeffery Cox brings this citizen suit under the Clean Water Act, 33 U.S.C. § 1365, against Defendant Board of County Commissioners of Franklin County, Ohio. Cox alleges that there are ongoing illegal discharges into the municipal separate storm sewer system and this has created water quality problems in numerous waterways in Franklin County. Cox alleges that due to these discharges and the County's failure to remedy them, the County is in violation of the CWA, Ohio law and the National Pollutant Discharge Elimination System Permit ("NPDES Permit") issued to the County.

This matter is before the Court on the County's motion to dismiss. The motion is threefold, raising challenges relating to subject matter jurisdiction, standing and the statute of limitations. For the reasons set forth below, the motion is largely denied.

I.      **Background**

Congress enacted the Clean Water Act for the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act prohibits "'the discharge of any pollutant by any person' unless done in compliance with some provision of the Act." S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe, 541 U.S. 95, 102 (2004) (quoting 33 U.S.C. § 1311(a)). The Act authorizes the issuance of NPDES permits which "place limits on the type and quantity of pollutants that can be released into the Nation's waters." Id. "Additionally, permit-holders are generally required both to monitor their effluent discharges and to report these results." Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n, 389 F.3d 536, 539 (6th Cir. 2004) (citing 33 U.S.C. § 1318).

Franklin County holds a NPDES Permit for its storm sewer system. The municipal separate storm sewer system, or "MS4," is a system of conveyances which gather and control the flow of storm water. See NPDES Permit, at 23; 40 C.F.R. 1222.26(b)(13) (defining storm water as runoff, snow melt runoff, and surface runoff and drainage). The MS4 gathers storm water from "road drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains." NPDES Permit, at 23. The MS4 discharges the gathered storm waters into surface waters through point sources called outfalls. See NPDES Permit, at 23. The County is responsible for hundreds of outfalls, including ones which discharge into the Alum Creek, Big Darby Creek, Big Walnut Creek, Blacklick Creek, Hellbranch Run, Little Darby Creek, Olentangy River, Rocky Fork Creek, Scioto River and Walnut Creek.

According to the Complaint, Jeffrey Cox moved into his home on West Kanawha Avenue in Sharon Township, Ohio in 2016. He alleges that he almost immediately began to observe (and continues to observe) "noxious sewage odors and gases" being emitted from the storm sewer and curb inlets on his street. Complaint, at ¶ 20. He contends that this storm sewer is part of the County's MS4 which discharges into the nearby Olentangy River. Cox further alleges that discharges, including sewage, from non-storm water sources into the MS4 are responsible for the noxious emissions. Cox avers that, due to the "ongoing unlawful discharges of non-storm water and other pollutants from numerous outfalls of the MS4, including from the outfall at the end of West Kanawha Avenue to the Olentangy River, Mr. Cox has sharply curtailed his use and enjoyment of nearby rivers and creeks." Complaint, at ¶ 24.

Cox alleges that the problems he has observed on his street are not isolated. He alleges that the NPDES Permit requires the County to conduct water quality tests, known as "dry weather screenings." Results from past screenings, he asserts, show unacceptably high pathogen levels and indicate illicit discharges, including sewage, at hundreds of outfalls throughout the County's MS4. He alleges that a primary source of the illicit discharges are home sewage treatment systems (HSTSs) which are improperly connected to the MS4.

On August 20, 2018, Cox sent a Notice of Intent to File Citizen Suit Under the CWA ("Notice Letter") to the Board of County Commissioners, the Director of the Ohio Environmental Protection Agency and the United States EPA. Therein, Cox alleged, *inter alia*, that the County has violated and continues to violate effluent standards and limitations under the CWA. See Notice Letter, at 4.

Cox alleged in his Notice Letter that there are "illicit connections" discharging pollutants into the MS4. Notice Letter, at 5. He asserts that a majority of these illicit connections are pipes which

2

connect HSTSs to the MS4. He alleges that some HSTSs do not work properly and thus discharge pollutants such as sewage into the MS4. Cox claims that during dry weather screenings, the County has detected the presence of sewage. Cox concludes that because the County has not "eliminated these illicit connections," the County is in violation of the CWA. Notice Letter, at 6.

At the request of the Ohio EPA, the State of Ohio commenced a suit on October 17, 2018 against the County (hereinafter the "State Action"). The State of Ohio asserted five claims against the County. On November 9, 2018, the Ohio EPA reached a Proposed Consent Decree with the County. Cox alleges that the Proposed Consent Decree lacks meaningful enforcement mechanisms and "allow[s] the County to continue to engage in wholesale violations of Ohio Revised Code Chapter 6111, the NPDES Permit, and provisions of the CWA." Complaint, at ¶ 16. Cox adds that the Proposed Consent Decree contains vague standards whereby the County can avoid eliminating illicit discharges if doing so would not be "feasible." Id. at ¶ 17. And he alleges that the Proposed Consent Decree fails to address the majority of violations which were alleged in the Notice Letter. Id. at ¶ 19.

Dissatisfied with the Proposed Consent Decree and State Action, Cox filed the present suit against the County. The Complaint contains ten causes of action. In Count One, Cox alleges that the County violated the CWA by failing "to trace and locate sources of non-storm water discharged from outfalls" and failing to "eliminate those sources." Id. at ¶ 76.

In Counts Two and Three, Cox alleges violations of the CWA and NPDES Permit for the County's failure to eliminate known illicit discharges to the MS4 and for allowing discharges mixed with sources of non-storm water.

Cox asserts in Count Four that the County failed to develop a comprehensive storm sewer map of the entire MS4, as required by the NPDES Permit. In Count Five, Cox alleges that the County failed to follow the Permit's requirement that the County, through ordinance or other regulatory mechanisms, prohibit illicit discharges into the MS4. Cox avers in Count Six that the County failed to satisfy the Permit's requirement that it "submit to the Ohio EPA a list of all on-site sewage disposal systems connected to discharge to the MS4 system." Id. at ¶ 99.

In Count Seven, Cox alleges that the County failed to "reduce the discharge of pollutants from the MS4 to the maximum extent practicable," as required by the CWA and Ohio law. Id. at ¶ 103.

In Counts Eight and Nine, he alleges "programmatic violations" related to: (1) the Stormwater Management Program ("SWMP") developed under the NPDES Permit, and (2) the Illicit Discharge Detection and Elimination Program ("IDDE") developed under the Permit. Cox asserts that the County has failed to adequately develop the SWMP and IDDE programs required by the Permit.

3

Lastly, Cox alleges in Count Ten that the County has been negligent in operating and maintaining the MS4.

The County has filed a motion to dismiss, arguing that the Court lacks subject matter jurisdiction because Cox did not comply with the statutory notice requirements in 33 U.S.C. § 1365(b). On this point, the County first argues that Cox did not identify the date or dates of the alleged violations in the Notice Letter and thus did not provide sufficient notice under § 1365(b)(1)(A). The County then argues that because the Ohio EPA is diligently prosecuting the alleged violations, Cox is statutorily barred under § 1365(b)(1)(B) from bringing this suit.

The County also argues that Cox lacks standing to bring this suit. The County contends that the alleged injuries he suffered in Sharon Township, where he resides, are not redressable and that he has not suffered any tangible harm from the alleged violations occurring outside of Sharon Township. In addition, the County argues that the vast majority of violations alleged by Cox are time-barred.

## II.     Standard of Review

The County brings its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), claiming that the Court lacks subject matter jurisdiction over this case. When a defendant raises the issue of lack of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. See Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Section 1365 of the CWA authorizes citizen suits against governmental instrumentalities which are alleged to be in violation of a federal or state effluent standard or limitation. 33 U.S.C. § 1365(a). The statute confers federal district courts with jurisdiction over such citizen suits. Id.

However, a citizen suit may not be commenced unless: (1) the plaintiff has given the alleged violator sixty-days' notice of the alleged violation and (2) the federal or state EPA is not "diligently prosecuting" an action in federal or state court to require compliance with the standard or limitation. Id. at § 1365(b).

The parties dispute whether the County's challenge to subject matter jurisdiction is a facial or factual one. A facial attack on jurisdiction challenges the sufficiency of the pleading, and the court takes the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1995).

A factual attack challenges the factual existence of subject matter jurisdiction. In a factual attack there is no presumption of truthfulness, but instead the district court may weigh evidence to

determine whether subject matter jurisdiction exists.  Id.  In resolving disputed facts, the trial court has wide discretion to consider affidavits, documents, and even conduct a limited evidentiary hearing. See Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  Jurisdictional issues are for the court to decide, regardless of whether they hinge on legal or factual determinations.  See Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

The County characterizes its challenge as a factual one because it has attached the following documents to its motion: (1) the NPDES Permit, (2) the complaint filed in the State Action, and (3) the August 20, 2018 Notice Letter sent by Cox to the County.

Cox argues that the County's motion should be treated as a facial attack because the documents cited above do not constitute extrinsic evidence, as they are integral to the Federal Complaint.  The Court agrees.  The NPDES Permit and the Notice Letter are cited and quoted extensively in the Complaint and their content is not in dispute.  See Commercial Money Center, Inc. v. Illinois Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").  Further, the Court may take judicial notice of the complaint in the State Action.  See Brown v. Matauszak, 415 Fed. App'x 608, 614 n.7 (6th Cir. 2011) (citing cases).

The Court will therefore treat the County's attack on subject matter jurisdiction as a facial one. Morever, with respect to the County's standing and statute of limitations arguments, the Court will apply the normal standard of review under Rule 12(b)(6).  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted).

### III.     Subject Matter Jurisdiction
#### A.     Notice

The CWA provides that no citizen suit may be commenced in federal district court "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the United States EPA], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."  33 U.S.C. § 1365(b)(1)(A).

Regulations promulgated under the CWA specify the contents which a notice letter must contain:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient

> to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3.

Compliance with the notice requirements of the statue and regulation is a "jurisdictional prerequisite" to filing a citizen suit. Sierra Club Ohio Chapter v. City of Columbus, 282 F.Supp.2d 756, 763 (S.D. Ohio 2003) (citing Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989)). "[C]itizens providing notice to alleged violators must strictly comply with the notice requirements." Id. (citing Atl. States Legal Found. v. United Musical Instruments, 61 F.3d 473, 478 (6th Cir. 1995); Frilling v. Village of Anna, 924 F.Supp. 821, 833 (S.D. Ohio 1996)).

The County argues that the Notice Letter lacks sufficient information as to the dates of the alleged violations. Claims One, Two, Three and Eight of the Notice Letter (which correspond respectively to Counts One, Two, Three and Seven of the Federal Complaint) allege that violations have occurred each day for the past five years, at least, and continue to occur to the present. The thrust of these claims is that there have been illicit discharges from the MS4 and that the County has, for at least the five years preceding the date of the Notice Letter, allowed the illicit discharges to continue occurring, failed to trace and locate the sources of the discharges, and failed to reduce or eliminate the discharges or their sources.

Claims Four, Five and Six of the Notice Letter (which correspond to Counts Four, Five and Six of the Federal Complaint) assert that the NPDES Permit set a deadline of 2008 by which the County was required to: develop a comprehensive storm sewer map, enact ordinances or regulations prohibiting illicit discharges, and submit to the Ohio EPA a list of all sewage disposal systems connected to the MS4. Cox contends that the County to date has yet to satisfy these requirements, and thus the violations are ongoing.

Claim Seven of the Notice Letter (which corresponds to both Counts Eight and Nine of the Federal Complaint) alleges that the NPDES Permit requires the development of the SWMP and IDDE programs. Cox asserts that the County has failed, since December 19, 2016 for the SWMP and since November 25, 2013 for the IDDE, to develop the programs as required by the Permit.

The County argues that the Notice Letter is insufficient because it did not cite to any particular date for an alleged violation. The County further contends that the use of words such as "continuous"

6

and "daily" in the Notice Letter are inadequate because they do not "identify any specific date, or days, or even the number of days involved." Motion to Dismiss, at 7.

Cox responds that the violations alleged in the Notice Letter truly have occurred on a daily basis and are ongoing. He argues that he is not required to "list tens of thousands of individual dates" but rather only "state that violations occurred every day for a specified period of time." Response in Opposition, at 6.

The County relies on Frilling v. Honda of America Mfg. Inc., No. C-3-96-181, 1996 WL 1619348 (S.D. Ohio Oct. 21, 1996), in which the court found that terms such as "intermittent," "continuous" and "nearly daily" were "insufficient to satisfy the requirement that the plaintiffs provide sufficient information to allow the Defendant to identify the date or dates of the alleged violations." 1996 WL 1619348 at *6 (footnote omitted). The court examined the dictionary definitions of "continuous" and "nearly daily" and found that plaintiff's use of the terms "suggest that, on any given day, it is more likely than not that an alleged violation will have occurred," which creates "considerable ambiguity" since the terms do not allow the defendant to "identify any specific date or dates, or even the number of days involved." Id. (emphasis omitted).

The Notice Letter submitted by Cox can be distinguished from the notice at issue in Frilling. Here, the Notice Letter uses the terms "every day" and "each day" in describing the alleged violations. These words do not create uncertainty over whether a violation occurred or not on a specific date. These terms mean that a violation occurred every single day. And, unlike in Frilling, the Notice Letter further identifies specific date ranges over which the various violations have been occurring,. The Notice Letter clearly gives notice that the violations alleged in Claims One through Six and Claim Eight have taken place each and every day for the last five years and will continue to occur each and every day until they are remedied. With respect to Claim Seven, the Notice Letter plainly asserts that the alleged SWMP violations have occurred daily since December 19, 2016 and that the alleged IDDE violations have occurred daily since November 25, 2013, and that both types of violations will continue unless remedied.

This case is similar to the facts presented in City of Ashtabula v. Norfolk Southern Corporation, 633 F.Supp.2d 519 (N.D. Ohio 2009). There, plaintiff alleged that "violations have occurred on each and every day" since June 1, 1999. Id. at 524. The court found that this language sufficiently provided "specific dates for the alleged violations." Id. at 525. The court reasoned that this language indicated that the "[p]laintiff believes the violations occurred on June 1, 1999, on June 2, 1999, on June 3, 1999, and so on until the date the letter was issued." Id.

7

So too here the Notice Letter provides specific start dates from which the alleged violations have been taken place. Cox alleges that seven of the nine types of violations have been occurring daily since five years before the Notice Letter was submitted on August 20, 2018. Thus, the alleged violations occurred on August 20, 2013, August 21, 2013, on August 22, 2013 and each day until the date the Notice Letter was issued. For the other two alleged types of violations (concerning the SWMP and IDDE), the Notice Letter alleges that the violations have occurred "each day" since December 19, 2016 and November 25, 2013, respectively. The Notice Letter's use of specific date ranges to describe the alleged violations is sufficient to satisfy the notice provision of 33 U.S.C. § 1365(b)(1)(A). See City of Ashtabula, 633 F.Supp.2d at 524-25.

### B. Diligent Prosecution

In addition to imposing a notice requirement, the CWA provides that a citizen suit may not be commenced:

> if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b)(1)(B). "[A] diligent prosecution bar only applies to those issues sought to be addressed in a citizen action that overlap with those issues sought to be addressed by the government's suit." United States v. Bd. of Cnty. Commissioners of Hamilton Cnty., No. 1:02-cv-107, 2005 WL 2033708, at *11 (S.D. Ohio Aug. 23, 2005); see also Frilling v. Village of Anna, 924 F.Supp. 821, 836 (S.D. Ohio 1996) ("[C]itizen suits are barred only if they are based on the *very same* standards, limitations, or orders for which the State has brought a civil enforcement action, and only if the State seeks to require compliance with the same.") (emphasis in original).

Here, the County argues that the filing of the State Action bars Cox's citizen suit. In resolving this issue, the Court conducts a two-part inquiry. See id.. The Court must first determine if the State Action requires "compliance with the same standard, limitation or order" which is at issue in the citizen suit. Id. If so, the Court must then examine whether the State Action is being "diligently prosecuted" to require compliance with the standard, limitation or order. Id.

#### 1. Same Standard, Limitation or Order

The State of Ohio brought five claims against the County in the State Action. Each claim relates to an alleged failure by the County to comply with the NPDES Permit and Ohio law. In Count One, the State alleges that the County has failed to comply with the its obligation to develop and submit a comprehensive storm sewer map of the MS4. Count Two alleges that the County has failed

8

to identify and map HSTSs which are connected to the MS4. In Count Three, it is alleged that the County has failed to evaluate HSTSs for non-storm water discharges into the MS4. In Count Four the State alleges that the County has failed to determine if there are existing HSTSs connected to the MS4 which can be feasibly connected to the central sewer system of the City of Columbus. And Count Five alleges that the County has failed to map, list and evaluate HSTSs that were installed prior to the issuance of the NPDES Permit.

### a. Counts Four and Six of the Federal Complaint

In its motion to dismiss, the County does not address how the claims in the State Action would require compliance with the same standards at issue in the Federal Complaint. Instead, the County asserts in conclusory fashion that the mere filing of the State Action bars the federal suit in its entirety.

In his response brief, Cox concedes that the State Action overlaps with the Federal Complaint with respect to Counts Four and Six of the Federal Complaint. See Response in Opp'n, at 11 n.6. Count Four asserts that the County violated the NPDES Permit by failing to develop a "comprehensive storm sewer map showing the location of all outfalls, the names and location of all surface waters of the State that receive discharges from those outfalls, and the entire MS4 system." Complaint, at ¶ 91. This claim directly coincides with Count One in the State Action, which likewise alleges that the County violated the NPDES Permit by failing to develop the required comprehensive storm sewer map. See State Action, at ¶ 40.

Count Six of the Federal Complaint alleges that the County has failed in its obligation under the NPDES Permit to "submit to [the] Ohio EPA a list of all on-site sewage disposal systems connected to discharge to the MS4." Complaint, at ¶ 99. This claim directly coincides with Count Two in the State Action, which alleges that the County failed to satisfy the Permit's requirement of submitting to the Ohio EPA a list of "all on-site sewage disposal systems connected to discharge to [the County's] MS4." State Action, at ¶ 45.

The Court thus finds that Claims One and Two of the State Action require compliance with the same standards at issue in Counts Four and Six of the Federal Complaint. Though Cox concedes as much, he contends that Counts Four and Six are not precluded because the State has not diligently prosecuted the State Action. The Court will consider this argument in Part III.B.2 below.

### b. Counts One, Two, Three, Five and Seven of the Federal Complaint

In its reply brief, the County again makes a blanket assertion that the State Action covers all of the claims raised in the Federal Complaint. But with respect to Counts One, Two, Three, Five and

9

Seven of the Federal Complaint, the County fails to identify any allegations or language from the State Action which would match or correspond to those Counts.

Instead, the County argues that the substance of what Cox alleges in those Counts does not amount to a violation of the NPDES Permit. The County contends that it is lawful under Ohio law for HSTSs to be connected to the MS4 if the HSTS was in operation before 2010.

The Court will not address the County's new argument at this time. Not only was it first raised in a reply brief, it is well outside the scope of the County's subject matter jurisdiction challenge. See NetJets Large Aircraft, Inc. v. United States, 80 F.Supp.3d 743, 765 (S.D. Ohio 2015) (refusing to consider argument raised for the first time in a reply brief).

### c. Counts Eight and Nine of the Federal Complaint

The County, in its reply brief, contends that Count Eight of the Federal Complaint "is addressed in the State Action" and that Count Nine "is addressed in each of the five causes of action in the State Action." Reply Brief, at 12. But the County does not offer any explanation as to how the State Action overlaps with the allegations in Counts Eight and Nine of the Federal Complaint.

Upon examination of the complaint in the State Action, the Court finds no language which would appear to require compliance with the standards at issue in Counts Eight and Nine of the Federal Complaint. Counts Eight and Nine relate to what the Federal Complaint calls "programmatic violations," whereby the County allegedly failed to develop a Stormwater Management Program and an Illicit Discharge Detection and Elimination Program, as required by the NPDES Permit. Neither the SWMP nor the IDDE are mentioned in the State Action.

### 2. Diligent Prosecution

The Court thus discerns at this time that the State Action overlaps with the Federal Complaint only with respect to Count Four (failure to develop a comprehensive storm sewer map) and Count Six (failure to submit to the Ohio EPA a list of all on-site sewage disposal systems connected to the MS4). The Court must next determine if the State is diligently prosecuting claims in the State Action claims which would require compliance with the standards at issue in Counts Four and Six of the Federal Complaint.

"[A] CWA enforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so." The Piney Run Pres. Ass'n v. The Cnty. Comm'rs of Carroll Cnty., 523 F.3d 453, 459 (4th Cir. 2008) (internal quotation marks omitted). Diligence "is presumed," id., and the "burden for proving non-diligence is heavy," Ohio Valley Envtl. Coalition, Inc. v. Maple Coal Co., 808 F.Supp.2d 868, 883 (S.D. W. Va. 2008). This "deferential"

standard requires the citizen-plaintiff to "meet a high standard to demonstrate that [the government] has failed to prosecute a violation diligently." Karr v. Hefner, 475 F.3d 1192, 1198 (10th Cir. 2007). In meeting his burden, the citizen-plaintiff must do more than show that the government's prosecutorial strategy fails to coincide with his strategy or is less aggressive than what he prefers. See Tennessee Clean Water Network v. Tennessee Valley Auth., 206 F.Supp.3d 1280, 1293 (M.D. Tenn. 2016); Ohio Valley, 808 F.Supp.2d at 884. He must show that the government's action is incapable of requiring compliance with the applicable standards. See Piney Run, 523 F.3d at 459. "Section 1365(b)(1)(B) does not require government prosecution to be far-reaching or zealous. It requires only diligence." Karr, 475 F.3d at 1197.

Shortly after the filing of the State Action, the State and the County agreed to a Proposed Consent Decree. According to the Federal Complaint, the Proposed Consent Decree is so deficient that is shows the State Action is not being diligently prosecuted.[1] The Complaint alleges that the Proposed Consent Decree is illusory and inadequate because it fails to require the County to eliminate all illicit discharges into the MS4 and contains vague language which allows the County to avoid correcting such discharges if doing so would not be feasible in the County's view.

Cox's attack on the State's lack of diligence has potential merit. In Jones v. City of Lakeland, 224 F.3d 518 (6th Cir. 2000) (en banc), the citizen-plaintiff alleged that the State of Tennessee had not diligently prosecuted compliance with applicable federal and state standards. The complaint alleged that certain consent orders between the State and City of Lakeland permitted the City to continue to discharge sewage into waterways, waived compliance deadlines and imposed "nominal token penalties." Id. at 522-23. The Sixth Circuit held that the complaint's allegations, which were accepted as true on a motion to dismiss, supported an inference that the consent orders were "sweetheart" deals reached under the pretext of enforcement, and thus did not constitute diligent prosecution. Id.

Despite the potential merit of Cox's argument, the Court finds that allegations of the Federal Complaint do not support an inference which could satisfy plaintiff's heavy burden of proving non-diligence. The alleged shortcomings of the Proposed Consent Decree all relate to its failure to require the County to eliminate illicit discharges into the MS4. According to the Federal Complaint, the Proposed Consent Decree fails to establish meaningful enforcement mechanisms and standards by which the County would be forced to eliminate such discharges. Importantly, the Federal Complaint

---

[1] A copy of the Proposed Consent Decree is not on the record before the Court. For purposes of the pending motion to dismiss, the Court will accept as true the Federal Complaint's allegations about the deficiencies of the Proposed Consent Decree.

11

does not identify any deficiencies with the Proposed Consent Decree as it would relate to the allegations in Counts Four and Six. That is, Cox does not allege that the Proposed Consent Decree fails to enforce the County's obligation to develop a comprehensive storm sewer map or excuses the County from submitting a list of on-site sewage disposal systems connected to the MS4. The State Action contains claims directly alleging that the County has committed violations regarding the map and the list, and the Federal Complaint fails to allege how these State Action claims are not being diligently prosecuted.

Accordingly, Counts Four and Six of the Federal Complaint are dismissed.

### IV. Standing and Statute of Limitations

The County's motion to dismiss next raises the issues of standing and statute of limitations. Relevant to both issues are the Federal Complaint's allegations about "dry weather screenings." The Complaint lists 163 screenings in which the County allegedly conducted water quality tests at various outfalls in the MS4 system. The screenings detected the existence of illicit discharges of non-storm water into the MS4.

Each dry weather screening is identified in the Complaint by a sequence of letters and numbers, such as "PI-14-BL-0012." The Complaint does not indicate what the letters and numbers signify. According to the County, they in part correspond to a year (14 for 2014) and location (BL for Blendon Township).

The County's standing and statute of limitations arguments regarding the screenings are intertwined. The County makes four arguments: (1) Cox lacks standing for alleged violations outside of Sharon Township, where he resides; (2) all of the alleged violations within Sharon Township occurred outside of the statute of limitations period; (3) Cox lacks standing even for violations within Sharon Township because the violations are not redressable; and (4) even if Cox has standing for alleged violations outside of Sharon Township, all but 13 of the screenings took place beyond the limitations period and, in any event, the claims based on those 13 screenings fail based on evidence presented by way of affidavits attached to the motion and to the reply brief.

The Court addresses each of these arguments, but in a different order, below.

#### A. Standing

To satisfy Article III's standing requirements, a plaintiff must show that: (1) he has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendant; and (3) it is likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 180-81 (2000).

### 1. Sharon Township

The County does not dispute that Cox has sufficiently alleged an injury in fact in Sharon Township. Cox alleges that he frequently can smell noxious odors at or near his residence emanating from the part of the MS4 located at his street. He alleges that the odors interfere with his use and enjoyment of his property, including impairing his ability to do yardwork, spend time on his patio, cook outdoors, take walks and ride his bicycle. See, Ainsworth v. Owenby, 326 F.Supp.3d 1111, 1119 (D. Or. 2018) (finding an injury in fact where plaintiffs alleged that their ability to use and enjoy their property was impaired by smoke and foul odors coming from neighboring property). Cox further alleges that his injury is traceable to the County's failure to comply with the CWA and NPDES Permit by eliminating illicit discharges into the MS4 near his residence.

With respect to the third element of standing, however, the County contends that any alleged violations within Sharon Township are not redressable. The County maintains that the dry weather screenings in Sharon Township occurred in 2006, 2011, and 2012, and that Cox lacks standing because citizen suits cannot be brought for past violations.

The County is right that "wholly past violations" are not redressable. Gwaltney of Smithfield, Inc. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 64 (1987). The CWA uses present-tense language in authorizing citizen suits against persons alleged "to be in violation" of the effluent standards established under the Act. 33 U.S.C. § 1365(a)(1). The Supreme Court held in Gwaltney that a citizen-plaintiff must "allege a state of either continuous or intermittent violation – that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Gwaltney, 484 U.S. at 57.

The Court must nonetheless reject the County's redressability argument because it mischaracterizes the Complaint, which plainly alleges that the County's violations are ongoing. According to the Complaint, the dry weather screenings, including those in Sharon Township, represent violations which the County has not yet remedied. The screenings reflect snapshots in time and serve as initial evidence that illicit discharges have occurred. The Complaint asserts that the County has failed to eliminate the sources of the illicit discharges and that the County has, for instance, improperly allowed HSTSs to be connected to the MS4. The Complaint further alleges that so long as the County fails to remedy the illicit connections and discharges, the violations will continue to occur each and every day and Cox will continue to suffer injury. See Center for Biological Diversity

13

v. Marina Point Dev. Assocs., 434 F.Supp.2d 789, 797 (C.D. Cal. 2006) ("Although no private action lies for wholly past violations, evidence of past violations can help prove a continuing violation as well as establish the likelihood of future violations."); accord Louisiana Oystermen Ass'n, Inc. v. Hilcorp Energy Co., No. CV 16-10171, 2017 WL 3263425, at *3 (E.D. La. Mar. 17, 2017).

The Court thus finds that the Complaint's allegations are sufficient to establish the element of redressability.

### 2. Other Townships

The County argues that Cox also lacks standing for violations occurring outside of Sharon Township. The County contends that Cox has not alleged an injury in fact because he does not have property in the other townships and has not suffered any tangible harm from the alleged violations.

The Court must reject this standing argument as well. In the context of environmental actions, the Supreme Court has held that "[w]hile generalized harm to the forest or environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." Summers v. Earth Island Institute, 555 U.S. 488, 494 (2009).

In Laidlaw, the Supreme Court held that the element of an injury in fact was satisfied where concerns over pollutant discharges into a river caused the plaintiffs to curtail their recreational use of the river and lessened their aesthetic enjoyment of it. See Laidlaw, 528 U.S. at 169. The plaintiffs' recreational and aesthetic interests included canoeing, fishing, birdwatching and picnicking. "We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Id. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)).

Similarly, in American Canoe Association v. City of Louisa Water & Sewer Commission, 389 F.3d 536 (6th Cir. 2004), one of the plaintiffs alleged that toxic discharges into a river caused him to avoid canoeing and fishing in the river. The Sixth Circuit held that plaintiff's "averments adequately alleged that he suffered an injury in fact to his aesthetic and recreational values." Id. at 542.

Here the Complaint alleges that Cox has "spent thousands of hours volunteering" to preserve the rivers, streams and creeks of Franklin County. Compl., at ¶ 72. He has "organiz[ed] and participat[ed] in clean-up activities on the Olentangy River, Alum Creek, and Blacklick Creek." Id. His uses of the waterways have included conducting clean-up activities on a weekly basis for several years at one of the waterways and also testing the quality of the waterways. Cox's concerns about the high pathogen levels which were found at the waterways, and which allegedly resulted from the

14

County's failure to eliminate illicit discharges, have caused him to "sharply curtail[] his use and enjoyment of the streams, rivers, and creeks of Franklin County." Id.

Cox's activities (river and creek clean-up) do not quite match those in Laidlaw and American Canoe (canoeing, fishing, birdwatch and picnicking). But his interest in the waterways counts just the same as an interest in their recreational and aesthetic value. His use of the waterways is in cleaning them up and preserving them. Cox contends that he has devoted much personal time and effort in clean-up activities, thereby protecting and improving the recreational and aesthetic value of the waterways in Franklin County. He further alleges that the County's conduct has substantially harmed the recreational and aesthetic value of the waterways, enough so that he has sharply curtailed his use of them.

Under Laidlaw and Sierra Club, Cox's allegations are sufficient to establish an injury in fact because he has averred that he uses the affected waterways and that he is a person for whom the recreational and aesthetic value of the waterways has been lessened by the challenged activity. The Court thus finds that Cox has standing to assert claims with respect to alleged violations outside of Sharon Township.[2]

### B. Statute of Limitations

The County argues that all but 13 of the dry weather screenings listed in the Complaint took place outside of the five-year statute of limitations found in 28 U.S.C. § 2462.[3] Cox responds that, again, the dry weather screenings are referenced only to show the violations have occurred. But because they have not been remedied, Cox argues that the violations are continuous and not barred by the statute of limitations.

For purposes of the present motion to dismiss, the Court finds that Cox has the better of this argument. "As the Clean Water Act makes clear, each day upon which an unpermitted discharge occurs results in a separate and distinct violation of § 301(a)." Wisconsin Res. Prot. Council, Ctr. for

---

[2] The County does not dispute that Cox has satisfied the elements of traceability and redressability.

[3] The CWA does not include a statute of limitations provision, but courts have held that Section 2462 applies to citizen suits seeking enforcement of the civil penalties available under the CWA. See, e.g., Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 451 F.3d 77, 88 (2nd Cir. 2006); Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 74-75 (3rd Cir. 1990); Frilling v. Honda of America Mfg., Inc., No. C-3-96-181, 1996 WL 1619348, at *8 (S.D. Ohio 1996); Harpeth River Watershed Ass'n v. City of Franklin, No. 3:14-1743, 2016 WL 827584, at *6 (M.D. Tenn. Mar. 3, 2016).

Biological Diversity v. Flambeau Min. Co., 903 F.Supp.2d 690, 721 (W.D. Wis. 2012) (citing 33 U.S.C. §§ 1311(a), 1362(12), 1319(d)). See also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 487 (2d Cir. 2001) ("[E]ach discharge of a pollutant represents a distinct violation of the Act . . . ."); United States v. Rutherford Oil Corp., 756 F.Supp.2d 782, 790-93 (S.D. Tex. 2010) (discussing the "continuing violations exception"); United States v. Reaves, 923 F.Supp. 1530, 1534 (M.D. Fla. 1996). "A continuing violation applies where the conduct is ongoing, rather than a single event." Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys., 111 F.3d 376, 382 (5th Cir. 1997). Thus, a citizen-plaintiff "may seek civil penalties for each violation that accrued within the five years preceding the notice letter." Wisconsin Res. Prot. Council, 903 F.Supp.2d at 721.

The Complaint here sufficiently alleges that the illicit discharges detected by the dry weather screenings are the types of violations which occur every day and continue to the present. The upshot of the County's argument is that the dry weather screenings were one-time events which reflect wholly past violations, but, as was discussed above with respect to redressability, the Complaint alleges continuous violations. Though the dry weather screenings may have occurred over five years before the Notice Letter, the illicit discharges have allegedly occurred every day within the limitations period.[4]

Finally, the County argues that with respect to the 13 screenings which took place within five years before the filing of the Notice Letter, the results of the screenings did not actually indicate unacceptably high pathogen levels. For this proposition, the County has submitted the affidavit of Josh Garver, an assistant director for the County's Soil and Water Conservation District. In its reply brief, the County additionally submits the affidavit of Nathan Ralph, Franklin County Public Health Supervisor, stating that certain of the alleged illicit discharges between 2013 and 2016 have been abated or resolved.

The Court cannot consider extrinsic evidence such as the Garver and Ralph affidavits at the Rule 12(b)(6) stage. See Roth Steel Prod. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983) ("[E]xtrinsic evidence cannot be considered in determining whether the complaint states a claim."). The affidavits contain factual content which contradict the allegations of the Complaint. The Court

---

[4] The issue of whether the alleged violations are in fact continuous ones will be a matter for factual development. The application of the statute of limitations to the circumstances of the case often must be done at the summary judgment stage and may require expert testimony as to the cause or source of the violation(s). See, e.g., Rutherford Oil Corp., 756 F.Supp.2d at 790-93; Day, LLC v. Plantation Pipeline Co., 315 F.Supp.3d 1219, 1236 (N.D. Ala. 2018); Reaves, 923 F.Supp. at 1532-34.

16

must disregard the affidavits and accept the well-pleaded allegations as true. See Iqbal, 556 U.S. at 679. The Complaint plausibly alleges that the County conducted dry whether screenings at the outfalls and detected unacceptably high levels of substances associated with human waste, which resulted from illicit connections of HSTSs into the County's MS4. The Complaint further plausibly alleges that the County has not yet corrected the cause or source of these violations. The County will have a full opportunity at a later stage to prove its factual contentions that no violations occurred and that the alleged violations have been abated.

**V.     Conclusion**

For the reasons stated above, the County's motion to dismiss (doc. 3) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to Counts Four and Six of the Complaint, but denied in all other respects.

Plaintiff's motion for leave to file a sur-reply (doc. 7) to address new arguments made in the defendant's reply brief is DENIED, as the Court has not considered those arguments.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: January 31, 2020